National Heritage Corp. v. Cemetery Comm.

NATIONAL HERITAGE CORPORATION, GREENLAWN MEMORIAL
    PARK, INC., FOREST HILL MEMORIAL PARK, INC., RANDOLPH
    MEMORIAL PARK, INC., CUMBERLAND MEMORIAL GARDENS, INC.,
    PINELAWN MEMORIAL PARK, INC., AND MEMORIAL CONSUL-
    TANTS OF CLINTON, NORTH CAROLINA, INC., PETITIONERS v. NORTH
    CAROLINA CEMETERY COMMISSION, RESPONDENT

No. 8010SC186

(Filed 7 October 1980)

**Cemeteries § 1– sale of conditional sales contracts to finance companies – funds
not required to be placed in trust**

    Former G.S. 65-66 did not require plaintiff cemetery companies to place
    in trust a portion of funds received from the sales to finance companies of
    conditional sales contracts for burial goods and services, since the statute
    did not require plaintiffs to put funds in trust before customers made pay-
    ments.

APPEAL by plaintiffs from *Hobgood, (Hamilton H.), Judge.*
Judgment entered 11 October 1979 in Superior Court, WAKE
County. Heard in the Court of Appeals 28 August 1980.

This is an appeal by National Heritage Corporation and the
other plaintiffs which are wholly owned subsidiaries of the
National Heritage Corporation. The plaintiffs are in the ceme-
tery business. As a part of their business, they sell concrete
vaults, bronze memorials, granite bases for the bronze memo-
rials, and other associated cemetery merchandise to individual
consumers. These sales are made prior to the deaths of the
consumers, and some of them are purchased by the use of in-
stallment contracts. In 1977, the plaintiffs sold certain of these
installment contracts to two separate finance companies. The
defendant made a ruling in which it held that a part of the
receipts from the sale of these contracts was required to be
placed in trust pursuant to G.S. 65-66 prior to its 1979 amend-
ment. The plaintiffs petitioned the superior court for review
pursuant to G.S. 150A-43 et seq. The superior court affirmed the
ruling of the defendant Cemetery Commission. Plaintiffs
appealed.

*Joslin, Culbertson, Sedberry and Houck, by William Joslin,
for plaintiff appellants.*

*Attorney General Edmisten, by Assistant Attorney General
Norma S. Harrell, for defendant appellee.*

WEBB, Judge.

This appeal requires an interpretation of G.S. 65-66 prior to its amendment in 1979. At that time, the statute, in pertinent part, provided as follows:

> Receipts from sale of personal property or services; trust fund; penalties. — (a) It shall be deemed contrary to public policy if any person or legal entity receives, holds, controls or manages funds or proceeds received from the sale of, or from a contract to sell, personal property or services which may be used in a cemetery in connection with the burial of or the commemoration of the memory of a deceased human being, where payments for the same are made either outright or on an installment basis prior to the demise of the person or persons so purchasing them, or for whom they are so purchased, unless such person or legal entity holds, controls or manages said funds, subject to the limitations and regulations prescribed in this section . . . .
>
> (b) Any cemetery company or other entity entering into a contract for the sale of personal property or services, to be used in a cemetery in connection with disposing of, or commemorating the memory of, a deceased human being wherein the use of the personal property or the furnishing of the services is not immediately requested or required, shall deposit proceeds received on the contract as follows:
>
> (1) Into a trust fund administered by a corporate trustee in accordance with a written trust instrument.
>
> (2) Seventy-five percent (75%) of all proceeds received on such contracts shall be deposited until the amount deposited equals seventy-five percent (75%) of the actual sale price of the property or services so sold.
>
> (3) The deposit herein required shall be made into the trust fund so established on or before the tenth day of the month following receipt by the cemetery company or other entity from the purchaser.

The question posed by this appeal is whether this section of the statute required the plaintiffs to place funds in trust which were received from the sale to finance companies of conditional

sales contracts for burial goods and services. The statute was amended in 1979 to make it clear that from that time such funds would have to be placed in trust. The appellee concedes that, read literally, the statute did not cover the situation in the case sub judice. It contends that the obvious intention of the General Assembly was to focus on the receipt of funds by a cemetery company whether from a customer or a finance company. The appellee argues that in order to protect the public, the statute should be read to require the plaintiffs to place these funds in trust. The difficulty with the defendant's argument is that we must interpret the statute as it is written. Subsection (a) provides that funds "received from the sale of, or from a contract to sell, personal property or services ... where payments for the same are made either outright or on an installment basis" shall be subject to the section. This language speaks of funds received "from a contract" and might be interpreted to mean funds received from the sale of a contract to a third party. The statute is not clear as to this, however. Subsection (b) provides "[a]ny cemetery company ... shall deposit proceeds received on the contract ... (3) ... on or before the tenth day of the month following receipt by the cemetery company or other entity from the purchaser." This subsection is clear that the funds must be placed in trust when customers make their payments. We believe that under a fair reading of the statute, the plain language did not require the plaintiffs to put funds in trust before customers had made payments. However desirable the result may be, we do not believe we should, on the basis of public policy, read something into the statute which was not enacted by the General Assembly. We hold it was error to require the plaintiffs to place funds in trust which were received by the plaintiffs from the sale of the installment contracts.

We reverse and remand for a judgment consistent with this opinion.

Reversed and remanded.

Chief Judge MORRIS and Judge HEDRICK concur.